## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| SLEP-TONE ENTERTAINMENT CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15-cv-1008 |
| ) | |
| CDBG ENTERPRISES INC., an Illinois corporation, and BILLY MYERS, ) ) | |
| ) | |
| Defendants. ) | |

## **O R D E R**

This matter is before the Court on Plaintiff's Motion for Entry of Default Judgment Against Defendant CDBG Enterprises Inc. (Doc. 10). As explained herein, Plaintiff's Motion for Default Judgment is granted.

### FACTS ALLEGED

Slep-Tone is the manufacturer and distributor of karaoke accompaniment tracks sold under the trademark "SOUND CHOICE". It sells its products exclusively on CD+G discs as its preferred media. These discs require special players that are capable of decoding the CD+G format. Technology has advanced such that the karaoke tracks stored on compact discs in CD+G format can be decoded and copied to computer hard drives or other storage devices. Slep-Tone permits karaoke operators, such as Defendants, to use purchased discs to provide karaoke services to patrons under certain conditions. Karaoke operators have used the available technology to copy one purchased disc to two or more computer systems for simultaneous use and other similarly unauthorized uses.

Slep-Tone and its affiliate companies pay statutory and negotiated royalties to the owners of copyright in the underlying musical works for their activities in legitimately creating, copying, distributing, and selling compact discs containing karaoke accompaniment tracks. Unfortunately, Slep-Tone has become victimized by the widespread creation, distribution, and commercial use of counterfeit copies of Slep-Tone's karaoke discs.

Defendants provide karaoke entertainment at their venue BG Karaoke Saloon in Peoria, Illinois. In order to provide services, rather than using original karaoke discs, Defendants rely upon one or more computer hard drives that store files containing karaoke accompaniment tracks. Defendants did not pay royalties or fees to Slep-Tone or to the owners of copyright in the underlying musical works for the privilege of using these materials. Defendants did not pay any royalties or fees to Slep-Tone for the privilege of displaying the Sound Choice Marks during their karaoke shows.

Slep-Tone is the owner of U.S. Trademark Registration No. 1,923,448, issued October 3, 1995, and renewed once, for the trademark SOUND CHOICE, for "pre-recorded magnetic audio cassette tapes and compact discs containing musical compositions and compact discs containing video related to musical compositions." Slep-Tone is the owner of U.S. Service Mark Registration No. 4,099,045, issued February 14, 2012, for the trademark SOUND CHOICE, for "conducting entertainment exhibitions in the nature of karaoke shows." Slep-Tone is the owner of U.S. Trademark Registration No. 2,000,725, issued September 17, 1996, and renewed once, for a display trademark as follows: for "pre-recorded magnetic audio

cassette tapes and compact discs containing musical compositions and compact discs containing video related to musical compositions." Slep-Tone is the owner of U.S. Service Mark Registration No. 4,099,052, issued February 14, 2012, for the same display trademark as in the preceding paragraph, for "conducting entertainment exhibitions in the nature of karaoke shows."

Slep-Tone has, for the entire time its marks identified above ("the Sound Choice Marks") have been federally registered, provided the public with notice of those federal registrations through the consistent display of the symbol ® with its marks as used. Principally, the Sound Choice Marks are indicators of Slep-Tone as the origin of karaoke accompaniment tracks, meaning that those marks indicate that the tracks to which they are applied were made and distributed by Slep-Tone or at its direction and under its control. Slep-Tone is the owner of distinctive and protectable trade dress associated with its graphical displays ("the Trade Dress"). This distinctive and protectable trade dress includes, at a minimum, (1) the use of a particular typeface, style, and visual arrangement in displaying the lyrics; (2) the Sound Choice Marks; and (3) the use of particular styles in displaying entry cues for singers, namely a series of vanishing rectangles to indicate the cue. Slep-Tone has used its trade dress continuously and substantially exclusively for a period of decades. The aforementioned trade dress serves to distinguish Slep-Tone's tracks from the tracks of their competitors, such that persons who are even minimally frequent consumers of karaoke entertainment services such as those provided by these Defendants are capable of identifying a particular karaoke track as

originating with Slep-Tone simply by examining the Trade Dress or any significant portion thereof, whether or not the Sound Choice Marks are also displayed.

## PROCEDURAL HISTORY

On January 6, 2015, Plaintiff Slep-Tone Entertainment Corporation ("Slep-Tone") filed its Complaint (Doc. 1) seeking various relief for trademark and trade dress infringement and unfair competition arising under §§ 32 and 43 of the Trademark Act of 1946 codified at 15 U.S.C. §§ 1114 and 1125 and under Illinois state law. On January 7, 2015, the Clerk for the Central District of Illinois issued a summons directed to CDBG. On February 17, 2015, CDBG was duly served with the Complaint and summons, by corporate service effectuated by a private process server on Billy Gene Meyers at 1001 Edgewater Drive, Pekin, IL 61554, U.S.A., the registered agent of CDBG. (Doc. No. 8). CDBG's answer or other response was due no later than March 10, 2015. Fed. R. Civ. P. 12(a)(1)(A)(i). (*See* Dkt. No. 8). CDBG failed to appear or file an answer or other response to the Complaint, timely or otherwise. Entry of default as to CDBG was entered on April 14, 2015.

## DISCUSSION

Default judgment establishes, "as a matter of law, that defendants are liable to plaintiff on each cause of action." *e360 Insight v. Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007). The well-pleaded facts of the complaint relating to liability are taken as true upon default. *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983). Defendant's default Complaint was entered on April 14, 2015. Accordingly, Defendant is liable to Plaintiff for its acts as alleged in the Complaint.

While liability may be established from the well-pleaded facts of the complaint, a plaintiff must still show it is entitled to the amount of damages it seeks. *Dundee Cement*, 722 F.2d at 1323. Default judgment may not be granted without a hearing on damages <u>unless</u> the amount of damages claimed is "capable of ascertainment from definite figures in the documentary evidence or in detailed affidavits." *Id*. These damages must be ascertained with "reasonable certainty." *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004).

The Court has reviewed the materials Plaintiff submitted with its Motion, and has determined Plaintiff has adequately supported its request for damages and injunctive relief. Based on the Court's review of the record in this case, and the allegations of the Complaint which are deemed admitted, the Court finds:

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1338(a) as this is a civil action arising under an Act of Congress relating to trademarks; 28 U.S.C. § 1338(b), in that Slep-Tone's Lanham Act unfair competition claims are related to Slep-Tone's trademark claims; and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Slep-Tone's Illinois Deceptive Trade Practices Act claims and Common Law Unfair Competition claims.

2. The Court has personal jurisdiction over CDBG and venue is proper in this judicial district.

3. The allegations pleaded in the Complaint that apply to CDBG are, by virtue of CDBG's default, deemed to have been admitted by CDBG.

4. By using counterfeit materials bearing the Marks to put on karaoke shows and by displaying the Marks during the course of those shows at CDBG's establishment, the Defendant has committed acts that are likely to cause confusion among consumers of their services as to authorization, sponsorship, and affiliation of their services with Slep-Tone. In particular, customers or patrons who visit CDBG's establishment are likely to be deceived into believing that the services are provided with Slep-Tone's authorization.

5. CDBG had the ability to control and exercise control over the use of infringing products, had knowledge that infringing products were being used to provide services, and had derived a direct financial benefit from the use of the infringing products.

6. Consequently, CDBG's activities constitute trademark infringement involving counterfeiting.

7. CDBG's infringement was willful and knowing.

8. Slep-Tone is entitled to a damage award for infringement of its registered trademarks in an amount between $1,000 and $2,000,000 per mark, as the Court may determine.

9. The Court finds that an award of $50,000 against CDBG is appropriate in this case, and will be sufficient to compensate Slep-Tone for its losses, and to deter others from engaging in similar conduct.

10. Slep-Tone is further entitled to a permanent injunction against CDBG's acts of infringement of its trademarks.

11. Slep-Tone is further entitled to, and the Court is authorized by statute to order, the seizure and destruction of the instruments of CDBG's acts of infringement, and such seizure and destruction are necessary to ensure CDBG's substantial compliance with the permanent injunction entered herein.

Accordingly, it is **ORDERED** as follows:

1. Judgment by default is hereby entered in favor of Plaintiff and against CDBG.

2. Pursuant to 15 U.S.C. § 1117, CDBG is hereby ordered to pay the sum of $50,000 to Slep-Tone Entertainment Corporation, with accrual of interest from the date of entry of this judgment until paid at the legal rate, pursuant to 28 U.S.C. § 1961.

3. CDBG and its contractors, agents, employees, and all persons in active concert or participation with them and having knowledge of this Order are hereby permanently ENJOINED (a) from using (including making, copying, sharing, distributing, selling, or otherwise using, or allowing to be used and particularly including use to provide karaoke services), commercially or otherwise, any karaoke accompaniment track that is marked with either the mark in U.S. Trademark Reg. Nos. 1,923,448 and 4,099,045, both for SOUND CHOICE®, and of U.S. Trademark Reg. Nos. 2,000,725 and 4,099,052, both for a display trademark SOUND CHOICE & Design®, without the prior, express written permission of Slep-Tone or its successor-in-interest, if any, to

the ownership of those marks, and (b) from making, copying, sharing, distributing, selling or otherwise using or allowing to be used, digitized copies of karaoke accompaniment tracks, commercially or otherwise, which tracks are marked with any mark or other designation belonging to any person from whom the Defendant has not obtained written authorization from the owner thereof to make, copy, share, distribute, sell or otherwise use the digitized copy, which must be produced to Slep-Tone to prove compliance with this Order.

4. It is further ordered that Defendant CDBG shall, within **twenty-eight (28)** days of the entry of this Order, deliver up to Slep-Tone at such place as it may reasonably designate within this District, each and every data storage device (including, without limitation, computer hard drive(s), compact disc(s), USB drive(s), portable music player(s), or other device(s) capable of storing karaoke accompaniment tracks in digitized format, but other than an original compact disc manufactured by the Plaintiff or at their direction) in their possession, custody, or control, which data storage device contains or has contained any karaoke accompaniment track, the use of which is enjoined under paragraph 3 above. If Defendant CDBG fails to do so within the required time, upon the certification of Slep-Tone or its attorneys, the United States Marshals Service is hereby authorized, directed, and ordered to effectuate seizure of such drives and devices, wherever they may be found; to enter upon private property as necessary to accomplish said seizure; to arrest and to bring before the Court any person who interferes with said seizure; such interference being punishable as contempt; and to deliver the drives or devices to Slep-Tone. The expense of the seizure under this paragraph shall be taxable to Defendant CDBG as costs.

5. After **thirty (30)** days following the delivery or seizure of any such data storage devices, unless extended by a court of competent jurisdiction over this matter, the United States Marshal shall cause the seized data storage devices to be destroyed, and shall notify the Court of the destruction of same.

6. All federal courts retain power to enforce their own orders, *Local Loan Co. v. Hunt*, 292 U.S. 234, 239 (1934), as such: The Court retains jurisdiction over this matter for the sole purpose of enforcing this order.

IT IS SO ORDERED.


Entered this 19th day of May, 2015.


                                                        s/ Joe B. McDade

                     JOE BILLY McDADE
                 United States Senior District Judge