UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| SLEP-TONE ENTERTAINMENT CORPORATION, </br></br> Plaintiff, </br></br> v. </br></br> CDBG ENTERPRISES INC., an Illinois corporation, and BILLY MYERS, </br></br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) Case No.   15-cv-1008 |

## O R D E R  &  O P I N I O N

Before the Court is Defendants' Motion To Set Aside Default Judgment. (Doc. 19). For the reasons stated herein, the motion is DENIED.

### BACKGROUND

Plaintiff Slep-Tone Entertainment Corporation ("Slep-Tone") is the manufacturer and distributor of karaoke accompaniment tracks sold under the trademark "SOUND CHOICE". It sells its products exclusively on CD+G discs as its preferred media. Slep-Tone permits karaoke operators, such as Defendants, to use purchased discs to provide karaoke services to patrons under certain conditions. Karaoke operators have used the available technology to copy one purchased disc to two or more computer systems for simultaneous use and other similarly unauthorized uses.

Defendants provide karaoke entertainment at their venue BG Karaoke Saloon in Peoria, Illinois. In order to provide services, rather than using original karaoke discs, Defendants rely upon one or more computer hard drives that store

files containing karaoke accompaniment tracks. Defendants did not pay royalties or fees to Slep-Tone or to the owners of copyright in the underlying musical works for the privilege of using these materials.

On January 6, 2015, Slep-Tone filed its Complaint (Doc. 1) seeking various relief for trademark and trade dress infringement and unfair competition arising under §§ 32 and 43 of the Trademark Act of 1946 codified at 15 U.S.C. §§ 1114 and 1125 and under Illinois state law. On January 7, 2015, the Clerk for the Central District of Illinois issued a summons directed to CDBG. On February 17, 2015, CDBG was duly served with the Complaint and summons, by corporate service effectuated by a private process server on Billy Gene Meyers at 1001 Edgewater Drive, Pekin, IL 61554, U.S.A. Mr. Meyers is the registered agent and President of CDBG. (Doc. No. 8). CDBG's answer or other response was due no later than March 10, 2015. Fed. R. Civ. P. 12(a)(1)(A)(i). (*See* Doc. 8). On March 26, 2015, Plaintiff moved for entry of default. (Doc. 10). The motion for entry of default had attached a certificate of service where Plaintiff's counsel swears he mailed a copy of the motion and proposed order of default to Meyers at the same address above, 1001 Edgewater Drive, Pekin, IL 61554. A response to that motion was due April 13, 2015. CDBG failed to appear or file an answer or other response to the Complaint, timely or otherwise.

Magistrate Judge Hawley allowed the motion as to entry of default, which was entered against CDBG on April 14, 2015. Because the entry of default and the entry of default judgment are separate events under Federal Rule of Civil Procedure 55, Judge Hawley left Plaintiff's motion pending for this Court to rule on the entry

2

of default judgment. More than a month later, on May 19, 2015, this Court ruled on the motion and entered a default judgment against CDBG. Defendants never responded to the motion for entry of default judgment. On July 10, 2015, about fifty-two days later, counsel for CDBG filed a motion for leave to appear in this matter, the instant motion and a belated answer.

## DISCUSSION

Default judgment establishes, "as a matter of law, that defendants are liable to plaintiff on each cause of action." *e360 Insight v. Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007). The well-pleaded facts of the complaint relating to liability are taken as true upon default. *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983). Defendant's default Complaint was entered on April 14, 2015. Accordingly, Defendant is liable to Plaintiff for its acts as alleged in the Complaint.

Rule 55(c) allows for default judgment to be set aside for reasons set out under Rule 60(b). In this jurisdiction, the standard under Rule 60(b) is that the movant must show (1) "good cause" for the default; (2) quick action to correct the default; and (3) the existence of a meritorious defense to the original complaint. *Pretzel & Stouffer,* 28 F.3d at 45; *United States v. DiMucci,* 879 F.2d 1488, 1495 (7th Cir.1989), *Jones v. Phipps*, 39 F.3d 158, 162 (7th Cir. 1994).

CDBG first contends that good cause exists because "Defendants did not receive notice of Plaintiff's Motion for Default in March 2015."[1] (Doc. 19 at 3). The

---

[1] CDBG's only challenge to the default judgment is that it did not receive adequate notice of the motion for entry of default judgment. Rule 55(b)(2) provides that notice of a motion for default judgment is only given to a defendant who has appeared

3

motion is silent as to when Defendants purportedly did receive notice of the motion. Plaintiff's motion contains a certificate of service in which Plaintiff's attorney certified that on March 26, 2015, he served Billy Myers with copies of Plaintiff's Motion for Entry of Default Judgment and other ancillary documents by mailing the same to Mr. Myers at 1001 Edgewater Drive, Pekin, IL 61554. Granted, only five calendar days remained in the month of March, but there were still ample days left before the Court took any action on the motion, let alone entering default judgment. CDBG makes no real attempt to explain its delay in filing an appropriate paper with the Court in the period between the point when it claims it received notice of the motion for default judgment and the Court's entry of default judgment.

In *Jones v. Phipps*, the Seventh Circuit examined whether a district court abused its discretion in disallowing a motion to vacate a default judgment brought under Rule 60(b)(1). 39 F.3d 158. The *Jones* court explained district courts are given great latitude in assessing the circumstances of the individual cases to discern if either good cause or excusable neglect exists. *Id.* at 164. A movant must show "extraordinary circumstances as a sufficient condition to justify disturbing a default judgment." *Id.* at 163. In *Jones*, neither incarceration nor lack of legal counsel provided the movant with the requisite good cause for defaulting. *Id.* Default will not be set aside if the circumstances show the movant chose to ignore the lawsuit despite possessing the ability to attend to it. *Id.*

---

personally or by a representative. So even if CDBG never received notice of the motion, such failure to receive notice of the motion was a consequence of CDBG's failure to answer or otherwise respond to the Complaint, inaction CDBG does not attempt to explain in the instant motion.

4

CDBG's explanations do not satisfy the standards set out in *Jones* because they do not provide the Court with an adequate basis to determine CDBG did nothing but sit on its hands without excuse. The motion provides

> Without appreciating the imminence of deadlines to file a responsive pleading, Defendants was under the impression that he had additional time to respond. Defendants neither knew nor expected a default to take place, as he was not notified of Plaintiff's Motion for Default, the deadline to respond to such motion, or the entry of default judgment against him. When Defendant learned of the default judgment, he immediately retained counsel and files this instant motion.

(Doc. 19 at 3). The motion does not answer crucial and relevant questions. For example: On what basis did Defendants think they had "additional time to respond"? How could "Defendants neither [know] nor [expect] a default to take place" when the summons they do not contest they were served provides on its face that "[i]f you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court."? (Doc. 8 at 1). Obviously, in the time between being served with the complaint and summons and entry of default, between February 17, 2015 and May 19, 2015, CDBG knew it took no steps to make the Court aware that it had any intention on participating in the case, let alone filing an answer or a responsive motion.

If anything, the assertion in the motion that "when Defendant learned of the default judgment, he immediately retained counsel and file[d] this instant motion" supports the inference that CDBG sat on its hands doing nothing until it learned of the default judgment, which again, was several months after Plaintiff's process server swears he served Mr. Meyers.

5

In short, the Court finds that Defendant CDBG has not demonstrated good cause for its failure to act before the imposition of default judgment. Having found no good cause for the default, the Court need not inquire further into whether CDBG has a meritorious defense or whether it took quick action to correct the default, which by the way it probably did not. After all, default judgment was entered on May 19, 2015 and the instant motion was not filed until fifty-two days later on July 10, 2015.

## CONCLUSION

For the reasons stated above, Defendants' Motion To Set Aside Default Judgment (Doc. 19) is DENIED.

IT IS SO ORDERED.

Entered this 27th day of July, 2015.

s/ Joe B. McDade
JOE BILLY McDADE
United States Senior District Judge
